**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>SWIPECLOCK, LLC<br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No.  2:22-CV-00371-JNP |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff Twin City Fire Insurance Company ("Hartford"), by and through its attorney, Scott Sweeney, of the law firm Wilson Elser Moskowitz Edelman & Dicker LLP, and for its Complaint for Declaratory Judgment against Defendant SwipeClock, LLC ("SwipeClock"), states as follows:

## STATEMENT OF THE CASE

1.      This action seeks a declaration, pursuant to 28 U.S.C. §2201, that Hartford owes no insurance coverage obligations to SwipeClock under certain policies of insurance issued by Hartford to SwipeClock in connection with a lawsuit filed against SwipeClock styled as *Junie Francois, individually and on behalf of other persons similarly situated v. SwipeClock, LLC,* Case No. 22-CH01041 currently pending in the Circuit Court of Cook County, Illinois, Chancery Division ("*Francois* Lawsuit").

## JURISDICTION AND VENUE

2.      Hartford is an insurance company formed under the laws of the State of Indiana with its principal place of business in Connecticut.

3.      SwipeClock is a Delaware limited liability company with its principal place of business in Utah. SwipeClock's owners are Pennsylvania and/or Delaware citizens. SwipeClock conducts business within the geographical boundaries of this District and seeks insurance coverage under insurance policies delivered within this District.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds $75,000.00 exclusive of costs and interest and the parties are citizens of different states.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391 as SwipeClock conducts business in this District and seek insurance coverage under insurance policies issued within the geographical boundaries of this District.

## FACTS

6.      Junie Francois commenced Lawsuit, on behalf of herself and a class of similarly situated individuals, to obtain statutory relief under the Illinois Biometric Privacy Act ("BIPA"), 740 ILSC § 14/1, *et seq.*   A true and accurate copy of the Complaint in the *Francois* Lawsuit is attached hereto as **Exhibit A.**

7.      The *Francois* Lawsuit alleges that SwipeClock's products are used in her workplace to collect, obtain, store and disseminate her own and other employees' biometric information in violation of BIPA. (**Ex. A**).

2

8.      According to the Complaint, SwipeClock is a developer and manufacturer of human resources and management solutions for employers, including biometric timekeeping devices and cloud-based time and attendance software products, which assist employers in scheduling labor, managing employee time and processing payroll. (**Ex. A**)

9.      SwipeClock allegedly partners with third-party vendors to act as authorized resellers of SwipeClock's biometric timekeeping devices, time and attendance software solutions to small and medium sized employers. (**Ex. A**).

10.     SwipeClock's products include cloud-based time and attendance software platforms, as well as its own biometric timekeeping devices and readers.  (**Ex. A**).

11.     Plaintiff seeks statutory penalties, redress and curtailment under BIPA of SwipeClock's collection, use, storage and disclosure of employees' sensitive and proprietary biometric identifiers and information collected at their place of employment. (**Ex. A**).

12.     Hartford issued policy nos.  83 SBA AA4733 in effect December 29, 2017 to December 29, 2018 and 81 SBA AA4733 from December 29, 2018 to February 24, 2022. True and accurate copies of the Policies are attached as **Exhibits B-F**.

13.     Each Hartford Policy includes Primary General Liability Coverage under Business Liability Coverage Form SS00080405, as modified by applicable endorsements. **Exhibits B-F**.

14.     The Policies also provide certain Employment Practice Liability Coverage under Form SS09011214 and Umbrella Coverage pursuant to of Umbrella Liability Provisions Form SX80020405, as amended by Following Form Endorsement – Personal and Advertising Injury Form SX24330610 ("Umbrella Coverage Form").  **Exhibits B-F**.

15.     The Primary General Liability Coverage Part of the Policies provides in part:

A.     COVERAGES

1.     Business Liability Coverage (Bodily Injury, Property Damage, Personal and Advertising Injury) Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

b.     This insurance applies:

(1)     To "bodily injury" and "property damage" only if:

(a)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

4

(b)    The "bodily injury" or "property damage" occurs during the policies period;

\*    \*    \*

(2)    To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policies period.

**Exs. B-F**.

13.    Section G- Definitions of the Primary General Liability Coverage Part provides:

\*    \*    \*

5.    "Bodily injury" means physical:

a.    injury

b.    sickness; or

c.    disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

\*    \*    \*

16.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.    False arrest, detention or imprisonment;

5

b.      Malicious prosecution;

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d.      Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.      Oral, written or electronic publication of material that violates a person's right of privacy.

f.      Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

g.      Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement." [1]

---

[1] With respect to the Policies in effect during the 2017-19 period this definition is altered by endorsement entitled "Personal and Advertising Injury Exclusion – Limited", Form SS50501201 limits coverage to only three enumerated offenses. It which states:

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to "personal and advertising injury" and none of the references to "personal and advertising injury" in the policy apply.

This exclusion does not apply to "personal and advertising injury" arising out of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution; or

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the

\* \* \*

20. "Property Damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it: or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it

\* \* \*

**Exs. B-F**.

14. The Primary General Liability Coverage Part contains the following Exclusions:

B. EXCLUSIONS

1. Applicable to Business Liability Coverage

This insurance does not apply to:

    a. Expected or Intended Injury

\* \* \*

    (2) Personal and advertising injury arising out of an offense committed by, at the direction of or with the consent of acquiescence of the insured with the expectation of inflicting personal and advertising injury.

---

person occupies, committed by or on behalf of its owner, landlord or lessor.

\*      \*      \*

p.      Personal and Advertising Injury

\*      \*      \*

"Personal and advertising injury"

\*      \*      \*

(2)      Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policies period;

\*      \*      \*

(8)      Arising out of an offense committed by an insured whose business is:
(a) Advertising, broadcasting, publishing or telecasting;
(b) Designing or determining content of web site for others;
(c) An internet search, access, content or service provider

However, this exclusion does not apply to Paragraphs a., b., and c. of the definition of "personal and advertising injury" under the Definitions Section

\*      \*      \*

(11)      Arising out of the violation of a person's right of privacy created by any state or federal act. However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

\*      \*      \*

8

(15)   Arising out of any access to or disclosure of any person's or organization's confidential or person information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\*       \*       \*

q.     Access Or Disclosure of Confidential Or Personal Information And Data-related Liability

(1)    Damages, other than damages because of "personal and advertising injury," arising out of any access to or disclosure of any person's or organization' confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

9

(2)     Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses for any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

r.      Employment-Related Practices[2]

"Personal and advertising injury" to:

(1)     A person arising out of any "employment-related practices";

\*          \*          \*

This exclusion applies:

(1)     Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

(2)     Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must

---

[2] Exclusion r. is quoted as amended by Endorsement Form SS00600915.

pay damages because of the injury.

\*      \*      \*

t.      Violation of Statutes That Govern E-Mails, Fax, Phone Calls or other Methods of Sending Material or Information:

"Bodily Injury" or "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1)      The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2)      The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

3)      Any statute, ordinance or regulation, other than the TCPA, or CAN-SPAM Act of 2003, that prohibits, or limits the sending, transmitting, communicating or distribution of material or information.

\*      \*      \*

(**Exs. B-F**).

15.      Subject to all of their terms, the Policies also contain certain claims made Employment Practices Liability Coverage (EPLI) which provides in part:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE
FORM
(CLAIMS MADE)**

**NOTICE:  COVERAGE PROVIDED BY THIS COVERAGE
PART IS CLAIMS MADE COVERAGE. EXECEPT AS
OTHERWISE SPECIFIED HEREIN:  COVERAGE APPLIES
ONLY TO A CLAIM FIRST MADE AGAINST THE
INSUREDS DURING THE POLICY PERIOD AND WHICH
HAS BEEN REPORTED TO US IN ACCORDANCE WITH
THE APPLICABLE NOTICE PROVISIONS.**

*     *     *

**SECTION I – INSURING AGREEMENT**

**Employment Practices Liability**

We shall pay "loss" on behalf of the "insured" resulting from
an "employment practices claim" first made against the
"insureds" during the "policy period" or Extended Reporting
Period, if applicable, for an "employment practices wrongful
act" by the "insureds,"

**SECTION II - DEFINITIONS**

*     *     *

C.      "Claim" means any "employment practices claim."

*     *     *

F.

*     *     *

I.      "Employee" means any natural person who was, is or
        shall become a(n):

        1.      employee of an "insured entity" including any
                part time, seasonal, temporary, leased, or
                loaned employee; or

        2.      volunteer or intern with an "insured entity."

12

\*         \*         \*

K.      "Employment practices claim" means any:

1.      written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

2.      civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration or similar pleading; or

3.      form administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of an "employee," an applicant for employment with an "insured entity," or an "independent contractor."

\*         \*         \*

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

13

L.      "Employment practices wrongful act" means:

1.      wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

2.      sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

3.      employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference; gender makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

4.      "Retaliation";

5.      breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

6.      violation of the Family and Medical Leave Act.

"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

a.      employment-related wrongful infliction of mental anguish or emotional distress;

b.      failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

14

       c.      negligent retention, supervision, hiring or training;

       d.      employment-related invasion of privacy, defamation, or misrepresentation; or

       e.      an "employee data privacy wrongful act."

*     *     *

(**Exs. B-F**).

16.    The Policies also contain certain Umbrella Liability Coverage through the Insuring Agreement of Umbrella Liability Provisions Form SX80020405, as amended endorsement SX24330610 and SX23151215.  The Insuring Agreement provides:

> We will pay those sums that the 'insured' becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance'[3] or of the 'self-insured retention' when no 'underlying insurance' applies, because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies caused by an 'occurrence'

*     *     *

**Exs. B-F**.

17.    Umbrella Form SX24330610 "Following Form Endorsement- "Personal and Advertising Injury" provides:

> This endorsement modifies insurance provided under the following:
>
> UMBRELLA POLICIES PROVISIONS
>
> Exclusion B.4 (Section I – Coverages), is replaced by the following:

---

[3] Underlying Insurance is that set forth in the schedule of underlying insurance which in this case is the Primary General Liability Coverage noted above.

4.      Personal and Advertising Injury

This policy does not apply to "personal and advertising injury."

EXCEPTION

This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies.

**Exs. B-F**.

18.    The Umbrella Coverage Part also states:

This insurance does not apply:

*       *       *

18.    Employment Practices Liability

Any injury or damage to:

1.      Person arising out of any:

(a)     Refusal to employ that person;

(b)     Termination of that person's employment; or

(c)     Any employment-related practices, polices, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person

16

\*       \*       \*

This exclusion applies:

Whether the "insured" may be liable as an employer or in any other capacity

\*       \*       \*

22.    Access Or Disclosure of Confidential Or Personal Information And Data-related Liability[4]

Damages arising out of:

(1)    Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2)    The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses for any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.\*       \*       \*

24.    Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information

---

[4] Quoted as amended by Endorsement SX 23 15 12 15

17

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b.   The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.   Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

*     *     *

**Exs. B-F**.

19.   The Umbrella Liability Coverage also contains the following endorsement:

*     *     *

A.   The following is added to Exclusions, B.4 Personal and Advertising Injury of Section 1-COVERAGES:

This insurance does not apply to:

Access Or Disclosure Of Confidential Or Personal Information

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

18

> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

*    *    *

**Exs. B-F**.

20.    Hartford denies any obligation to provide coverage for SwipeClock's claim for defense and/or indemnification in connection with the *Francois* Lawsuit under the Policies.

21.    An actual controversy exists between Hartford and SwipeClock as to the availability of insurance coverage with respect to the claims in the *Francois* Lawsuit under the Policies, and pursuant to 28 U.S.C. §2201, this Court is vested with the power to declare the rights and liabilities of the Parties hereto and to give such other and further relief as many be necessary.

**COUNT I**
**No Claim For Damages Because of "Bodily Injury", "Property Damage" Caused**
**by an "Occurrence" or "Personal and Advertising Injury"**

22.    Hartford incorporates and restates the allegations of Paragraphs 1 through 21 above as if fully set forth herein.

19

23.     Subject to all of its terms, the Policies only provide coverage for claims for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" or "personal and advertising injury" as those terms are defined and used in the Policies.

24.     The *Francois* Lawsuit does not allege a claim for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" or "personal and advertising injury" as those terms are defined and used in the Policies.

25.     Thus, Hartford owes no defense or indemnity obligations to SwipeClock for the claims against it in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for the claims against it in the *Francois* Lawsuit under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT II
## Employment-Related Practices Exclusions Preclude Coverage

26.     Hartford incorporates and restates the allegations of Paragraphs 1 through 25 above as if fully set forth herein.

27.     The Employment-Related Practices Exclusions in the Primary General Liability Coverage Part and Umbrella Liability Coverage Part preclude coverage for claims

arising out of any employment-related practices, irrespective of whether SwipeClock is sought to be held liable as an employer.

28.     To the extent there is any "personal and advertising injury," the claims in the *Francois* Lawsuit against SwipeClock are excluded from coverage by the Employment-Related Practices Exclusions.

29.     Consequently, Hartford owes no defense or indemnity obligations to SwipeClock for the claims against it in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for the claims against it in the *Francois* Lawsuit under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT III
## Statutory Right of Privacy Exclusions Preclude Coverage

30.     Hartford incorporates and restates the allegations of Paragraphs 1 through 29 above as if fully set forth herein.

31.     The Statutory Right of Privacy Exclusion in the Primary General Liability Coverage Part precludes coverage for "personal and advertising injury" arising out of a person's right of privacy created by any state or federal act.

32.     The only claims pled in the *Francois* Lawsuit are claims under Illinois' BIPA, a privacy statute.

33.     To the extent any "personal and advertising injury" is alleged in the *Francois* Lawsuit, the Statutory Right of Privacy Exclusion precludes coverage under the Primary General Liability Coverage Part.

34.     Therefore, Hartford owes no defense or indemnity obligations to SwipeClock for the claims against it in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for the claims against it in the *Francois* Lawsuit under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT IV
### Access or Disclosure Exclusions Preclude Coverage

35.     Hartford incorporates and restates the allegations of Paragraphs 1 through 34 above as if fully set forth herein.

36.     The Access or Disclosure Exclusions preclude coverage under the Primary General Liability Coverage and Umbrella Liability Coverage Parts for damages that arise out of access to or disclosure of any individuals' confidential or personal information, including health information or any other type of nonpublic information.

37.     To the extent that there is any "personal and advertising injury," the Access or Disclosure Exclusions in the Policies bar coverage under the Primary General Liability

22

Coverage and Umbrella Liability Coverage Parts for the claims alleged in the *Francois* Lawsuit.

38.      Accordingly, there is no duty to defend or indemnify SwipeClock for the claims in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for the claims against it in the *Francois* Lawsuit under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

## COUNT V
## Violation of Statutes Exclusions Preclude Coverage

39.      Hartford incorporates and restates the allegations of Paragraphs 1 through 38 above as if fully set forth herein.

40.      The Violation of Statutes Exclusions preclude coverage under the Primary General Liability Coverage and Umbrella Liability Coverage Parts for damages that arise directly or indirectly out of any act or omission that violates or is alleged to violate any statute that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

41.      To the extent that there is any "personal and advertising injury," the Violation of Statutes Exclusions in the Policies bar coverage under the Primary General Liability Coverage and Umbrella Liability Coverage Parts for the claims alleged in the *Francois* Lawsuit.

23

42.    Accordingly, there is no duty to defend or indemnify SwipeClock for the claims in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.    A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for the claims against it in the *Francois* Lawsuit under the Policies; and

B.    For all such just and equitable relief, including costs of this suit.

### COUNT VI
### Expected or Intended Exclusions Preclude Coverage

43.    Hartford incorporates and restates the allegations of Paragraphs 1 through 42 above as if fully set forth herein.

44.    The Expected or Intended Exclusion precludes coverage for "personal and advertising injury" arising out of an offense committed by or with the consent or acquiescence of the insured with the expectation of inflicting personal and advertising injury.

45.    Even if the claims in the *Francois* Lawsuit alleged claims for "personal and advertising injury," the Expected or Intended Exclusions bar coverage for any such claims.

46.    Therefore, there is no duty to defend or indemnify SwipeClock for the claims in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for the claims against it in the *Francois* Lawsuit under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

<u>**COUNT VII**</u>
<u>**Prior Publication Exclusions Preclude Coverage**</u>

47.     Hartford incorporates and restates the allegations of Paragraphs 1 through 46 above as if fully set forth herein.

48.     The Prior Publication Exclusions preclude coverage for "personal and advertising injury" that arises out of publication of material which first took place before the policy began.

49.     The Policies, subject to all of their terms, only provide coverage for the defined effective period.

50.     To the extent that there is any "personal and advertising injury," there is no coverage for any "personal and advertising injury" arising out of publication of material whose first publication took place before the inception of the first policy issued by Hartford.

51.     Therefore, Hartford owes no coverage to SwipeClock for such claims in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for such claims against it in the *Francois* Lawsuit under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

## COUNT VIII
## No Coverage for Uncovered Business Operations

52.     Hartford incorporates and restates the allegations of Paragraphs 1 through 51 above as if fully set forth herein.

53.     The Policies exclude coverage for "personal and advertising injury" arising out of an offense committed by an insured whose business is an internet search, access, content or service provider.

54.     SwipeClock's description of business is reflected in the Policies as "Application Service Providers" and the Complaint alleges that SwipeClock's biometric timekeeping devices integrate with SwipeClock's cloud-based time and attendance software platforms allowing for the transmission of biometric data collected to SwipeClock's servers and to third parties.

55.     Accordingly, the Uncovered Business Operations Exclusions exclude coverage and therefore there are no duties owed under the Policies for the *Francois* suit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock for this relief in the *Francois* Lawsuit under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

## COUNT IX
## No EPLI Coverage

56.     Hartford incorporates and restates the allegations of Paragraphs 1 through 55 above as if fully set forth herein.

26

57.     The EPLI Coverage is claims made coverage and is only triggered by claims first made during the policy period in effect at the time the first claim is made.

58.     The claims involved in the *Francois* Lawsuit appear to have been first made during the 12/29/21-2/24/22 Hartford Policy. Thus, any EPLI Coverage in the other Hartford Policies is inapplicable.

59.     The EPLI Coverage in the present Policy is inapplicable as the claims in the *Francois* Lawsuit are not claims resulting from an "employment practices claim" or an "employment practices wrongful act" as defined and required by the Policy.

60.     The claims in the *Francois* Lawsuit are not made by SwipeClock's "employees" or "independent contractors" as defined in the Policy, therefore they are not "employment practices claims" as defined and uncovered.

61.     Moreover, the *Francois* Lawsuit does not concern an "employment practices wrongful act" insofar as they do not fall within the six enumerated categories of claims in that definition.

62.     Therefore, Hartford owes no coverage to SwipeClock for the claims in the *Francois* Lawsuit.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock in the *Francois* Lawsuit under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## **COUNT X**

**No Umbrella Coverage**

63.     Hartford incorporates and restates the allegations of Paragraphs 1 through 62 above as if fully set forth herein.

64.     The Umbrella Coverage Part follows form to the Primary General Liability Coverage Part with respect to any potential "personal and advertising injury".

65.     Therefore, for the reasons outlined with respect to the Primary General Liability Coverage Part above, there is also no potential coverage for this claim under the Umbrella Coverage Part.

WHEREFORE, Plaintiff, Hartford, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend and/or indemnify SwipeClock in the *Francois* Lawsuit under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.


Respectfully submitted this 3rd day of June, 2022.


By:    /s/ Scott Sweeney
          Scott Sweeney (Utah #15070)
          Wilson Elser Moskowitz Edelman & Dicker LLP
          1225 17th Street, Suite 1700
          Denver, CO. 80202
          p. 303-572-5300
          scott.sweeney@wilsonelser.com
          *Attorneys for Plaintiff Twin City Fire Insurance Company*

*Pro Hac Vice Pending*
Michael J. Duffy (IL. 6196669)
Ashley L. Conaghan (IL. 6303052)
Wilson Elser Moskowitz Edelman &
Dicker LLP
55 West Monroe Street - Suite 3800
Chicago, IL 60603
(312) 704-0550 (main)
(312)  704-1522 (fax)
michael.duffy@wilsonelser.com
ashley.conaghan@wilsonelser.com
*Attorneys for Plaintiff Twin City Fire Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:   /s/ Scott Sweeney
Scott D. Sweeney
*Attorneys for Twin City Fire Insurance Company*